AO 91 (Rev. 11/11) Criminal Complaint (Rev. by USAO on 3/12/20)   ☐ Original   ☐ Duplicate Original

# UNITED STATES DISTRICT COURT

for the

Central District of California

United States of America

v.

RUBEN BARCENAS DE LA CRUZ,

Defendant

Case No. 2:24-mj-05838-DUTY

LODGED
CLERK, U.S. DISTRICT COURT
SEP 24 2024
CENTRAL DISTRICT OF CALIFORNIA
BY: rsm DEPUTY

FILED
CLERK, U.S. DISTRICT COURT
09/24/2024
CENTRAL DISTRICT OF CALIFORNIA
BY: GR DEPUTY

## CRIMINAL COMPLAINT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date of August 12, 2024, in the county of Los Angeles in the Central District of California, the defendant violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1951(a) | Interference with Commerce by Robbery |

This criminal complaint is based on these facts:

*Please see attached affidavit.*

☒ Continued on the attached sheet.

/s/ Toni Evelyn Ruvalcaba Marquez
*Complainant's signature*

Toni Evelyn Ruvalcaba Marquez, Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date: September 24, 2024

*Judge's signature*

City and state: Los Angeles, California     Hon. Karen L. Stevenson, Chief U.S. Magistrate Judge
*Printed name and title*

AUSA: Brandon E. Martinez-Jones, x7167

**AFFIDAVIT**

I, Toni Evelyn Ruvalcaba Marquez, being duly sworn, declare and state as follows:

### I. PURPOSE OF AFFIDAVIT

1. This affidavit is made in support of a criminal complaint and arrest warrant against Ruben Barcenas DE LA CRUZ ("DE LA CRUZ") for a violation of 18 U.S.C. § 1951(a) (Interference with Commerce by Robbery).

2. The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint and arrest warrant and does not purport to set forth all of my knowledge of or investigation into this matter. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

### II. BACKGROUND OF AFFIANT

3. I am employed as a Special Agent ("SA") with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") and have been so employed since December 2023. I am currently assigned to the ATF Los Angeles Field Division and am charged with investigating violations of arson, explosives, and firearms laws and regulations. I regularly refer to these laws and regulations during the course of my official duties. I am a graduate of the Criminal Investigator Training Program taught at

the Federal Law Enforcement Training Center ("FLETC") in Glynco, Georgia, and have completed specialized training at the ATF National Academy in the fields of arson, explosives, and firearms. Prior to my tenure as a Special Agent, I obtained a Bachelors degree in Criminal Justice from San Diego State University.

4. I have also received specialized training at FLETC concerning violations of the Gun Control Act within Title 18 of the United States Code and violations of the Controlled Substance Act within Title 21 of the United States Code. That specialized training covered topics such as surveillance, interviewing, warrant writing, evidence handling, arrest procedures, search procedures, and testifying in court.

### III. SUMMARY OF PROBABLE CAUSE

5. On August 12, 2024, a man later identified as DE LA CRUZ entered a Home Depot store in Palmdale, California, put items into a shopping cart, and left the store without paying for the items. When a store employee approached DE LA CRUZ, he pointed what appeared to be a black revolver firearm but was later determined to be revolver-style BB gun at the employee, then left the Home Depot in a pickup truck.

6. Later that same day, Los Angeles County Sheriff's Department ("LASD") deputies encountered the same pickup truck and stopped it on suspicion of robbery. DE LA CRUZ was in the passenger seat, and a relative of his was in the driver's seat. DE LA CRUZ was wearing clothes consistent with those he had worn during the Home Depot robbery a few hours prior. In an ice

chest in the truck's bed, deputies found a black, revolver-style BB gun with tape wrapped around its grip.

7. While DE LA CRUZ was detained, the Home Depot employee who had approached DE LA CRUZ during the robbery identified DE LA CRUZ as the man who pointed a gun at him earlier that day.

8. In a <u>Mirandized</u> interview, DE LA CRUZ admitted that he had been present at the Home Depot store earlier in the day, that he had placed items in a shopping cart, and that he had left the Home Depot without paying for the items. He admitted that he had returned home and placed the items he stole from the Home Depot in his residence. He denied having been confronted by any Home Depot employee or having pointed any weapon at any employee.

9. In a separate <u>Mirandized</u> interview, a relative of DE LA CRUZ stated that he had driven DE LA CRUZ to the Home Depot store earlier in the day as a favor, that he had waited outside the Home Depot while DE LA CRUZ went inside, and that DE LA CRUZ had exited the Home Depot store with containers of detergent and Clorox. DE LA CRUZ's relative denied any knowledge of the robbery, stated that the ice chest in the truck bed belonged to DE LA CRUZ, and said that DE LA CRUZ had placed the ice chest in the truck bed. The relative returned to the residence he shares with DE LA CRUZ, retrieved the containers of detergent and Clorox that DE LA CRUZ had robbed from the Home Depot, and gave them to deputies.

10. The Home Depot store sells products that are manufactured outside of California. The store also accepts credit card transactions.

## IV. STATEMENT OF PROBABLE CAUSE

### A. A Man, Later Identified as DE LA CRUZ, Robs a Home Depot Store with What Appears to Have Been a Revolver-Style Gun

11. Based on my review of a report prepared by Deputy Christopher Schaafsma of the LASD, footage from Home Depot and Target store surveillance cameras, and footage from LASD body-worn cameras, I know the following:

　　a. At approximately 8:22 P.M. on August 12, 2024, a man--later identified as DE LA CRUZ, as explained below--entered a Home Depot store located at 38215 47th Street East in Palmdale, California. The man had a stocky build with tattoos on his neck and arms and was wearing black camouflage-style shorts, a black shirt, and a black hat. When the man entered the store, he was carrying a grocery bag with what appeared to have been flower decorations on it.

　　b. The man walked around the store for approximately ten minutes. He placed containers of detergent and bleach into a shopping cart.

　　c. The man walked past the store's cash registers and toward the exit without paying for the items in his cart. A store employee, R.C., approached the man and told him to stop. The man did not follow R.C.'s instruction and continued to walk toward the exit.

4

        d.    R.C. followed the man to the exit. The man took out what appeared to be a revolver-style gun from the decorated shopping bag and pointed it at R.C. R.C. turned around and walked away from the man.

        e.    The man walked to the Home Depot store's parking lot and got into the passenger side of a tan, 1999, two-door Ford F-150 pickup truck bearing Arizona license plate number CJW1542 (the "Tan Pickup Truck"). The Tan Pickup Truck left the Home Depot, drove past a nearby Target store, and exited the parking lot.

    **B.**    **LASD Stops the Tan Pickup Truck, Encounters DE LA CRUZ and His Relative, and Finds Evidence Tying DE LA CRUZ to the Home Depot Robbery**

12.    Based on my review of Deputy Schaafsma's report and footage from LASD body-worn cameras, I know the following:

        a.    Later in the evening of August 12, 2024, LASD deputies encountered a pickup truck near a Food 4 Less store located at 2341 East Avenue South in Palmdale. The deputies recognized this vehicle as the Tan Pickup Truck and stopped it on suspicion of its occupants being involved in the robbery of the Home Depot earlier that evening.

        b.    When deputies approached the Tan Pickup Truck, they encountered DE LA CRUZ, who is a male Hispanic adult, sitting in the front passenger seat, wearing a black shirt, with tattoos on his neck, arms, and legs. He was also wearing a dark-colored hat with a Boston Red Sox "B" on its front.

        c.    Deputies also encountered another man who, as explained below, identified himself as a relative of DE LA CRUZ

("Relative 1"). Relative 1 was in the driver's seat of the Tan Pickup Truck.

   d. Deputies removed DE LA CRUZ and Relative 1 from the Tan Pickup Truck and placed them in separate patrol vehicles.

   e. Deputies searched the Tan Pickup Truck. In an ice chest in the truck bed, Deputy Olmos found a black, revolver-style BB gun with tape wrapped around its grip. On the floorboard of the passenger seat--where DE LA CRUZ had been sitting when deputies encountered the Tan Pickup Truck--Deputy Schaafsma found a tote-style, reusable grocery bag with images of lettuce and other vegetables on its exterior.

  **C. R.C. Identifies DE LA CRUZ as the Man Who Robbed the Home Depot**

13. Based on my review of Deputy Schaafsma's report and footage from LASD body-worn cameras, I know the following:

   a. A deputy picked up victim R.C. and drove him from the Home Depot store where the robbery occurred to the Food 4 Less parking lot.

   b. A deputy reviewed a "Field Identification of Suspects" admonition form with R.C., who acknowledged that he understood the form.

   c. Deputies escorted DE LA CRUZ from the patrol vehicle in which he had been seated so that R.C. could see DE LA CRUZ. R.C. positively identified DE LA CRUZ as the man who had pointed a gun at him earlier that evening at the Home Depot store and who had robbed items from the Home Depot.

**D.  DE LA CRUZ and Relative 1 Make Statements Tying DE LA CRUZ to the Home Depot Robbery**

14. Based on my review of Deputy Schaafsma's report and footage from LASD body-worn cameras, I know the following:

   a.  DE LA CRUZ identified himself as Ruben DE LA CRUZ.

   b.  Deputy Schaafsma read DE LA CRUZ his Miranda rights. DE LA CRUZ waived those rights and agreed to speak to Deputy Schaafsma.

   c.  DE LA CRUZ admitted that he had been present at the Home Depot store earlier that day, at approximately 8 P.M. He also admitted that he had placed items, including dryer sheets and detergent, into a shopping cart and left the store without paying for them. He stated that he had placed the items into a grocery bag bearing a fruit design. DE LA CRUZ denied that any employee had confronted him as he exited the Home Depot or that he pointed any gun at any employee.

   d.  DE LA CRUZ said that, after he left the Home Depot, he got into the passenger seat of the Tan Pickup Truck and left the area. He said that he and the Tan Pickup Truck's driver had then gone to their house in Palmdale, where DE LA CRUZ lives with his girlfriend ("Relative 2"). DE LA CRUZ removed the items that he had taken from the Home Depot from the Tan Pickup Truck and put them into the house before leaving the house again to go to Food 4 Less.

   e.  DE LA CRUZ denied that he owned any revolvers or that any revolvers were at his house.

7

  f. When Schaafsma asked DE LA CRUZ whether the ice chest found in the Tan Pickup Truck's bed was his, DE LA CRUZ stated that everything in the truck bed was trash.

  g. Deputy Schaafsma also interviewed Relative 1, who waived his Miranda rights and agreed to speak. Relative 1 provided his name and stated that he is related to Relative 2.

  h. Relative 1 was driving the Tan Pickup Truck when deputies detained it. He confirmed that the Tan Pickup Truck belongs to him. Relative 1 stated that he drove DE LA CRUZ to the Home Depot as a favor because DE LA CRUZ needed to buy chicken wire. Relative 1 waited in the Tan Pickup Truck while DE LA CRUZ was in the Home Depot. When DE LA CRUZ returned to the Tan Pickup Truck, he had two containers of soap and two containers of Clorox in a shopping cart. DE LA CRUZ placed these items into the back of the Tan Pickup Truck. Relative 1 then drove himself and DE LA CRUZ back to the house in Palmdale, where Relative 1 also lives.

  i. Relative 1 denied any knowledge of the robbery.

  j. Relative 1 also stated that the ice chest that had been found in the Tan Pickup Truck's bed belonged to DE LA CRUZ and that DE LA CRUZ had placed the cooler in the Tan Pickup Truck's bed so that the two could get drinks at Food 4 Less.

 **E.** **Relative 1 Retrieves Two Boxes of Detergent and Two Bottles of Clorox from DE LA CRUZ's Residence**

15. Based on my review of Deputy Schaafsma's report, I know that, after LASD interviewed DE LA CRUZ and Relative 1, Relative 1 escorted deputies to his residence in Palmdale, which

8

he shares with DE LA CRUZ and Relative 2. Relative 1 retrieved two containers of detergent and two containers of Clorox from the house, returned outside, and gave the items to deputies. Deputies returned the robbed items to the Home Depot store on 47th Street East in Palmdale.

    **F.**    **Home Depot Operates in and Affects Interstate Commerce**

    16.    Based on my conversations with him, I know that, on September 24, 2024, Deputy Schaafsma spoke to S.J., the manager of the Home Depot store on 47th Street East in Palmdale, who told him that the store sells products that are manufactured outside of California. The store also accepts credit card transactions.

    **G.**    **DE LA CRUZ's Criminal History**

    17.    Based on my review of criminal-history reports for DE LA CRUZ, I know that DE LA CRUZ has prior misdemeanor convictions, including a May 2019 conviction for grand theft in violation of California Penal Code § 487. DE LA CRUZ was also arrested in 1998 for contempt in willful disobedience of a court order in violation of California Penal Code § 166(a)(4).

//

//

## V. CONCLUSION

18. For all the reasons described above, there is probable cause to believe that DE LA CRUZ has committed a violation of 18 U.S.C. § 1951(a) (Interference with Commerce by Robbery).

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this 24th day of September, 2024.

_____
HON. KAREN L. STEVENSON
CHIEF UNITED STATES MAGISTRATE JUDGE